UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDREW R.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-310-LJV
DECISION & ORDER

---

On April 7, 2023, the plaintiff, Andrew R. ("Andrew"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] *Id.* On August 3, 2023, Andrew moved for judgment on the pleadings, Docket Item 7; on August 30, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 9; and on September 13, 2023, Andrew replied, Docket Item 10.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Andrew applied for both Children's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Children's DIB may be awarded to a claimant who is 18 years old or older and has a disability that began before the claimant reached age 22. *See* 20 C.F.R. § 404.350(a)(5). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Andrew's motion in part and denies the Commissioner's cross motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.     THE ALJ'S DECISION**

On May 19, 2021, the ALJ found that Andrew had not been under a disability from January 1, 2013, through the date of the decision.  *See* Docket Item 3 at 41.  The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a).  *See id* at 23–24.

At step one, the ALJ found that Andrew had not engaged in substantial gainful activity since January 1, 2013, his alleged onset date.  *Id.* at 25.  At step two, the ALJ found that Andrew suffered from nine severe, medically determinable impairments: "bilateral planta[r] fasciitis; body dysmorphic disorder; generalized anxiety disorder; attention deficit hyperactivity disorder (ADHD); obsessive-compulsive disorder; autism spectrum disorder; learning disability; and erythrome[l]algia."  *Id.*

At step three, the ALJ found that Andrew's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See id.*  More specifically, the ALJ found that Andrew's physical impairments did not meet or medically equal listing 1.18 (abnormality of a major joint in any extremity).  *Id.*  Likewise, the ALJ found that Andrew's mental

3

impairments did not meet or medically equal listing 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.10 (autism spectrum disorder), 12.11 (neurodevelopmental disorders), or 12.13 (eating disorders). *Id.* at 26.  In assessing Andrew's mental impairments, the ALJ found that Andrew was moderately impaired in: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself.  *Id.* at 26–27.

The ALJ then found that Andrew had the residual functional capacity ("RFC")[4] to "perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)" except that:

> [Andrew] can only occasionally, bilaterally, utilize foot control operation.  He can never climb ladders, ropes[,] or scaffolds, or crawl.  He can occasionally climb ramps or stairs.  He can frequently stoop, crouch, or kneel.  He is limited to only occasional exposure to dangerous moving machinery and unprotected heights.  He is limited to simple and routine instruction and task jobs, consistent with SVP-1 and SVP-2 jobs.  He is limited to work in a low[-]stress job, defined as having only occasional changes in the work setting and no assembly line type work.  [His w]ork must involve only occasional interaction with the public, co-workers, and supervisors.

*Id.* at 27.

At step four, the ALJ found that Andrew had no past relevant work.  *Id.* at 39.  But given Andrew's age, education, and RFC, the ALJ found at step five that Andrew could perform substantial gainful activity as a table worker, preparer, or document preparer.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

*Id.* at 40; *see Dictionary of Occupational Titles* 739.687-182, 1991 WL 680217 (Jan. 1, 2016); *id.* at 700.687-062, 1991 WL 678937 (Jan. 1, 2016); *id.* at 249.587-018, 1991 WL 672349 (Jan. 1, 2016). The ALJ therefore found that Andrew had not been under a disability from his alleged onset date through the date of the decision. *See* Docket Item 3 at 41.

## II.   ALLEGATIONS

Andrew argues that the ALJ erred in two ways. Docket Item 7-1 at 14–22. First, he argues that the ALJ failed to properly evaluate the opinion of Michael P. Santa Maria, Ph.D. *Id.* at 14–17. Second, he argues that the ALJ failed to properly evaluate the opinion of Linda Baker, LCSW. *Id.* at 17–22. This Court agrees that the ALJ erred and, because that error was to Andrew's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

For claims filed on or after March 27, 2017, such as Andrew's, an ALJ no longer "defer[s] or give[s] any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) from [a claimant's] medical sources." *Angela H.-M. v. Comm'r of Soc. Sec.*, 631 F. Supp. 3d 1, 7 (W.D.N.Y. 2022) (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)) (internal quotation marks omitted). Instead, an ALJ evaluates the opinion evidence and "articulate[s] . . . how persuasive she finds the medical opinions in the case record." *Id.*

The Code of Federal Regulations lists five factors for an ALJ to consider when evaluating a medical opinion: (1) the amount of evidence the source presents to support his or her opinion; (2) the consistency between the opinion and the record; (3) the treating provider's relationship with the claimant, including the length, frequency,

5

purpose, and extent of the relationship; (4) the treating provider's specialization; and (5) any other factors that "tend to support or contradict" the opinion.  20 C.F.R. § 404.1520c(c)(1)-(5).  The ALJ is required to "explain how [she] considered the supportability and consistency factors" because they are "the most important factors," and "may, but [is] not required to, explain how [she] considered the [remaining] factors." *Id.* § 404.1520c(b)(2).

With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).  As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).  In other words, supportability addresses how well a source explains and provides evidence for his or her opinion, and consistency addresses whether an opinion fits with the rest of the medical record.  *See Spottswood v. Kijakazi*, 2024 WL 89635, at *1 (2d Cir. Jan. 9, 2024).

On November 27, 2007, Dr. Santa Maria completed a neuropsychological evaluation of Andrew.  Docket Item 3 at 423–33.  Dr. Santa Maria concluded, among other things, that Andrew showed "cognitive deficits" in memory and processing speed. *Id.* at 432.  Dr. Santa Maria noted that at age 16, Andrew was reading at a third grade level (3.8 grade level) and doing math at a second grade level (2.7 grade level).  *See id.*

at 427-28.  And Dr. Santa Maria determined that Andrew had "a great deal of difficulty learning or remembering new information."  *Id.*  at 432.

The ALJ recounted the objective results of Dr. Santa Maria's evaluation but did not indicate how persuasive she found the accompanying opinion.  *See id.* at 31.[5]  Nor did the ALJ explicitly discuss whether that opinion was well supported by the evidence or consistent with the record.  *See id.*  And by failing to do so, the ALJ erred.  *See Loucks v. Kijakazi*, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022).

The Court's inquiry does not end there, however.  An ALJ's error is harmless if "a searching review of the record assures [the Court] that the substance of the [regulation] was not traversed."  *Id.* (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)) (internal quotation marks omitted).  In other words, the Court may affirm the ALJ's decision if "the record provides 'good reasons' for assigning" what weight the ALJ did to

---

[5] The Commissioner argues that the ALJ was not required to consider the persuasiveness of Dr. Santa Maria's evaluation, because, the Commissioner says, it did not fit the definition of a "medical opinion" under 20 C.F.R. § 404.1513.  *See* Docket Item 9-1 at 6–7.  But the regulations define a "medical opinion" as:

> [A] statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [a claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:
>
> . . .
>
> (ii) [A claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting[.]

20 C.F.R. § 404.1513(a)(2)(ii).  Certainly, the memory and processing-related limitations about which Dr. Santa Maria opined implicated, at the very least, Andrew's ability to remember and carry out instructions.  *See* Docket Item 3 at 431.  So Dr. Santa Maria's evaluation fell within the definition of a "medical opinion," and the ALJ therefore was required to assess its persuasiveness.  *See Angela H.-M.*, 631 F. Supp. 3d at 7.

7

Dr. Santa Maria's opinion.  *See Estrella*, 925 F.3d at 95 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2014)).  But the ALJ did not assign any weight to Dr. Santa Maria's opinion, and a searching review of the record does little to assuage this Court's concerns.

To begin, Dr. Santa Maria's opinion was consistent with the opinions of several other providers.  For example, in 2018, Craig Zuckerman, D.Ed., found that Andrew had "significant weaknesses" in "processing speed and working memory," Docket Item 3 at 441–47—the same weaknesses found by Dr. Santa Maria 11 years earlier, *id.* at 432.  Similarly, LCSW Baker, who began treating Andrew in 2018, opined that Andrew had "poor ability to process verbal instruction" and that "it takes many [] repetitions for [Andrew] to learn how to do any type of task."  Docket Item 4 at 125.  And LCSW Baker explained that Andrew had "difficulty with even simple instructions" and "great difficulty with new tasks."  *Id.*

What is more, at the hearing on February 19, 2021, Andrew testified that he was "forgetful" and needed to be frequently prompted to complete tasks.  *See* Docket Item 3 at 66–68, 71.  Andrew said that when doing laundry, for example, he would "throw a load in the washing machine" and "might remember [] six to eight hours [later] . . . to put [it] in the dryer."  *Id.* at 66.  And Andrew testified that he had difficulty learning new things and would "get anxiety" when doing so.  *Id.* at 67–68.  So Dr. Santa Maria's—like Dr. Zuckerman's and LCSW Baker's—determination that Andrew had difficulties with memory and processing speed was consistent with Andrew's activities of daily living and subjective complaints as well.  *Id.* at 432.

More troubling still, while the vocational expert provided various jobs consistent with the RFC, *see id.* at 78–79, he made it clear that if an individual took "twice the normal amount of time to learn how to perform [] tasks," or "if somebody needed their supervisor to come [] once every hour to remind them to stay on task," that would be work preclusive, *id.* at 81–82.  So a more restrictive RFC based on Dr. Santa Maria's memory or processing-related limitations may well have made a significant difference. *See Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) ("[T]he vocational expert's opinion on whether there were jobs [the claimant] could perform varied depending on how the [limitation] was defined.").

The Court recognizes, as the Commissioner says, that Dr. Santa Maria's opinion was issued "almost six years before the relevant period," which "greatly limited its relevance."  Docket Item 9-1 at 5–6.  Of course, the ALJ was entitled to consider that when weighing the evidence and reaching her decision.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  But it bears repeating that more than a decade after Dr. Santa Maria's evaluation, both Dr. Zuckerman and LCSW Baker echoed the same findings.  *See* Docket Item 3 at 441–47; Docket Item 4 at 142.  And regardless, it was incumbent on the ALJ to actually weigh the opinion, not to leave it to the Court to guess what the ALJ thought about it.  *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this [C]ourt, to weigh the conflicting evidence in the record."). By failing to do that, the ALJ erred.  *See Loucks*, 2022 WL 2189293, at *2.

That error is particularly troubling given the ALJ's treatment of LCSW Baker's opinion—specifically, her opinion that Andrew "has difficulty with even simple instructions[, and] therefore complex directions are impossible for him to complete."

9

Docket Item 4 at 125. The ALJ rejected that portion of LCSW Baker's opinion—which was consistent with Dr. Santa Maria's and Dr. Zuckerman's opinions—because Andrew "testified that he plays video games[,] . . . does model railroading[,] and . . . is able to cook for himself using an air fryer." Docket Item 3 at 31. But that largely misconstrues Andrew's testimony. Indeed, how "us[ing] the air fryer to make chicken," *id.* at 67, "buying toy train sets," *id.* at 71, and playing only "simple" video games because "complicated" ones were too difficult, *id.* at 72, indicates that Andrew can follow simple instructions, better yet complex ones, is entirely unclear.[6]

In sum, the ALJ failed to evaluate the persuasiveness of Dr. Santa Maria's opinion, and failed to explicitly discuss its supportability and consistency, as the regulations require. And because that error was not harmless, remand is required. *See Loucks*, 2022 WL 2189293, at *2 ("When the ALJ has committed procedural error, [the Court] generally remand[s] with instructions to reconsider the disability claim consistent with the procedural mandates of the governing regulations.").

---

[6] Andrew argues that the ALJ's improper evaluation of LCSW Baker's opinion alone warrants remand. *See* Docket Item 7-1 at 17–22. And that may well be the case. But the ALJ erred in evaluating Dr. Santa Maria's opinion, and the Court "will not reach the remaining issues raised by [Andrew] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 197, 199 (10th Cir. 2003); *see Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103–04 (W.D.N.Y. 2020).

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 9, is DENIED, and Andrew's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    March 6, 2026
         Buffalo, New York


                                         /s/ Lawrence J. Vilardo
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE